REQUESTED BY: William E. Peters, State Tax Commissioner, Lincoln, Nebraska.
1. Is the ten per cent penalty imposed by section60-1602, R.S. Supp., 1976, as amended by LB 660, on the owners of cabin trailers and mobile homes for failure to timely obtain the permits and pay the taxes on such cabin trailers and mobile homes, to be calculated on the total tax on such cabin trailers and mobile homes, or only on the first half payment which becomes delinquent on March 1?
2. Does section 3 of LB 660 require certificates of assessment to be given to the owners of all cabin trailers and mobile homes, or only to those who request them?
3. Does the county board of equalization have authority to change the values of cabin trailers and mobile homes as certified to the county assessors pursuant to sections77-1239 and 77-1239.01?
1. It is to be calculated on the total annual tax due on such cabin trailers and mobile homes.
2. Only to those who request them.
3. Only to the extent of correcting errors in classification into which a particular cabin trailer or mobile home has been placed by the county assessor.
1. Section 1 of LB 660 amended section 60-1602 to reduce the penalty imposed for failure to timely register and pay the tax on cabin trailers and mobile homes from twenty per cent to ten per cent `of the tax due or twenty-five dollars, whichever is greater.' Section 7 of the bill provides:
 "(1) Except as provided by section 8 of this act, one half of the taxes due under section 77-1240 for cabin trailers and mobile homes as defined in sections 60-1601
and 60-1601.01 shall become delinquent on March 1 and shall be paid prior to the registration of the cabin trailer or mobile home for the following registration period.
 "(2) The second half of such taxes shall become delinquent on September 1.
 "(3) If the second half of such taxes are not paid by October 1, the delinquent taxes shall be collected in accordance with the provisions of section 77-1241."
Your question is whether the ten per cent penalty is to be calculated on the entire tax due for the full year, or only on the part which is delinquent at the time payment is made. We believe it is clear that section 7 did not change the due date of the tax, but only the delinquency dates. In the first place, the very language of section 7 indicates this result.
It provides that one half of the tax due shall become delinquent on March 1, and the second half shall become delinquent on September 1. In speaking of one half of the tax due becoming delinquent on March 1, it clearly implies that the tax for the entire year was due before that time.
Furthermore, section 77-1241, as amended by LB 660, provides that motor vehicle taxes shall not become due until application is made for registration, but may be paid at any time subsequent to November 1 of the year prior to the year of registration. Section 60-1605 provides that cabin trailer and mobile home permits shall be renewed annually, and that the renewal shall become due on January 1 and delinquent on March 1. Section 60-1608 provides that permits and renewals thereof shall not be issued until proof is presented that taxes on such cabin trailers and mobile homes have been paid.
We therefore conclude that taxes are due at the time of registration, but that only half must be paid at that time, and the second half becomes delinquent September 1. On this basis, in computing the penalty for failure to apply for the necessary permit and pay the required half of the tax by March 1, the ten per cent penalty should be calculated against the tax for the entire year, because it is all `due.'
2. Section 3 of LB 660 provides:
 "Upon receipt of the schedule of tax valuation for mobile homes and cabin trailers as required under section 2 of this act, the county assessor or the county clerk where he is ex officio county assessor, shall provide a certificate of assessment to all property owners possessing such property which has been assessed for the current year as provided by section 77-1219."
Your question is whether this section requires the certificate of assessment to be sent to the owners of all mobile homes and cabin trailers in the county, or only to those who request them. Section 77-1219, R.R.S. 1943, provides in part:
 "It shall be the duty of the county assessor, or the county clerk where he is ex officio county assessor, when required by any person having property in charge which has been assessed for the current year, to give a certificate of assessment, showing the amount, kind, location and value of property assessed, and such certificate shall be evidence of the legal assessment of such property for the year. . . .:
We must determine what is modified by the words, `as provided by section 77-1219,' as used in section 3 of the bill. Does it mean the county assessor shall provide the certificate `as provided by section 77-1219,' or does it mean that he shall provide them to owners of property `which has been assessed as provided by section 77-1219?'
Since section 77-1219 does not deal at all with assessment of property, the Legislature cannot have used the phrase to refer to the method of assessment. It therefore refers to the duty of the county assessor to provide the certificates. Since section 77-1219 requires them to be furnished on request of `any person having property in charge which has been assessed for the current year,' we so construe the requirement found in section 3 of LB 660, and they should be furnished only on request.
3. Section 4 of LB 660 provides:
 "Any person who shall deem himself aggrieved or who shall complain that another is assessed too low under subdivision (3)(b) of section 2 of this act may appeal such assessment to the county board of equalization for review under the provisions of section 77-1503."
Section 2 of the act amends section 77-1239, and section 2(3)(b) of the act makes provision for a separate part of the schedule of actual values of motor vehicles to consist of the values of cabin trailers and mobile homes as defined in sections 60-1601 and 60-1601.01.
Section 4 of the bill therefore appears to give the owner of a cabin trailer or mobile home the right to appeal his assessment to the county board of equalization for review pursuant to section 77-1503. Section 77-1503 provides:
 "The county board of equalization shall fairly and impartially equalize the valuation of personal property of the county, and to that end shall, on the application of any person who shall deem himself aggrieved or who shall complain that another is assessed too low, review the assessment and correct the same as shall appear to be just."
Your question is what authority the county board of equalization has to change the assessed valuation of cabin trailers and mobile homes under these circumstances. We conclude that it can only correct errors made by the county assessor in the size of the cabin trailer or mobile home, or the classification into which it has been placed, because to permit the board any greater authority would be completely inconsistent with the central assessment of mobile homes and cabin trailers.
The Legislature has classified cabin trailers and mobile homes as motor vehicles for tax purposes. ArticleVIII, Section 1, of the Nebraska Constitution requires taxes to be levied by valuation uniformly and proportionately upon all tangible property, except that a different method may be established for the taxation of motor vehicles. Therefore, motor vehicles, including cabin trailers and mobile homes, are removed from the requirement of uniformity by valuation.
Section 77-1238, R.R.S. 1943, provides for a motor vehicle tax to be imposed in lieu of an ad valorem tax. Section77-1239 provides for the central assessment of motor vehicles by the Tax Commissioner, who prepares a schedule of actual values upon the several types of vehicles. You will note that the valuation is on types of vehicles, and not on individual motor vehicles. Section 77-1239.01 gives persons interested therein a right to appeal the assessments made by the Tax Commissioner.
Section 77-1240 provides that the county assessor of each county shall compute the motor vehicle tax on all motor vehicles based on the values certified to him by the State Board of Equalization and Assessment or the Tax Commissioner. Your question is whether section 4 of LB 660 authorizes the county board of equalization to modify the schedule of values certified to the county by changing the values of individual cabin trailers or mobile homes.
We are convinced that for this to be permitted would completely destroy the central assessment of such vehicles. The taxation of motor vehicles, including cabin trailers and mobile homes, is not actually ad valorem taxation, in the sense that it is based on the actual value of a particular motor vehicle. Rather, it is based on the average value of the class to which that motor vehicle belongs.
Motor vehicles, including cabin trailers and mobile homes, are not fungible, even within the various classes established in the schedule of values, but for purposes of taxation they are treated as if they were, and the central assessment of motor vehicles will not work if they are not so treated.
Let us take for illustration the example of two identical four-year-old automobiles, one of which has been driven 4,000 miles to and from church by the proverbial little old lady. The other has been driven 150,000 miles by an alcoholic traveling salesman and his teenage son, has been in five accidents, and has been repaired only enough to keep it running. These two automobiles do not have the same value, but for taxation purposes are treated as though they did. All vehicles of the same make and model are treated the same throughout the state. This is inherent in the system.
If a county board of equalization were authorized to make individual adjustments of value of motor vehicles, the entire system of central assessment would collapse. A system of central assessment is absolutely incompatible with a system of individual valuation. We must recognize that we are not dealing with ad valorem taxation, as we commonly understand it, but with a system of taxation by type of vehicle, with the taxation based on the average value for the various types.
We also recognize that there will be variations in values of cabin trailers and mobile homes within the same class as established by the Tax Commissioner's schedules. Perhaps even location may be a factor, so that, if the county boards of equalization were free to make adjustments, identical vehicles would be valued differently in different parts of the state. This cannot be permitted, if the present system is to continue.
Aggrieved taxpayers have been given an opportunity to contest the valuation given their cabin trailer or mobile home type by section 77-1239.01, so due process has been satisfied. We do not construe LB 660 as an abandonment of central assessment of cabin trailers and mobile homes. We therefore construe section 4 of LB 660 as giving an owner of such a vehicle an opportunity to contest the classification into which his vehicle has been placed by the assessor, but not to contest the valuation given to the class into which it falls. If the assessor has erroneously calculated the square footage of the vehicle, or if the vehicle has been classified by the assessor as `deluxe,' when it should be in a lower classification, the county board can make the necessary corrections. It cannot, however, change the square foot valuation for the various types of vehicles as certified by the Tax Commissioner.